# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

|  |  |  |
|---|---|---|
| Kyesha Edwards, | ) | |
| | ) | Civil Action No.: 3:19-cv-02671-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| BCDR, LLC, *d/b/a Chick-Fil-A*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Kyesha Edwards brought the instant suit alleging her former employer, Defendant BCDR,[1] retaliated against her under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* (*See* ECF No. 1-1.) Currently before the court is Defendant's Motion for Summary Judgment. (ECF No. 28.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to the United States Magistrate Judge for pretrial handling. In January 2021, the Magistrate Judge issued the Report and Recommendation ("Report") in which she recommended the court deny the Motion. (ECF No. 43 at 12.) Defendant filed Objections to the Report (ECF No. 45), to which Plaintiff replied (ECF No. 46).

For the following reasons, the court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 28.) The court **ACCEPTS** in part, **REJECTS** in part, and **MODIFIES** in part the Magistrate Judge's Report (ECF No. 43) and incorporates it herein by reference as set forth below.

---

[1] The court uses the terms "BCDR" and "Chick-Fil-A" interchangeably to refer to Defendant. Citations to deposition testimony refer to the transcript's original pagination rather than pagination generated by ECF.

# I.    RELEVANT BACKGROUND TO PENDING MOTION[2]

Plaintiff worked at a Chick-Fil-A for a few weeks in the summer of 2018.  (ECF No. 43 at

1.)  On several occasions she worked with a seventeen-year-old male employee, who she claims

> inappropriately invad[ed] her personal space and graz[ed] or touch[ed] her
> buttocks. At first, she was unsure whether this was accidental or intentional, so to
> discourage his behavior, she began counting out loud to him the times when he
> touched her in a manner she found objectionable.  Twice she spoke to him about it
> and asked him to stop. On August 9, 2018, [P]laintiff perceived two more such
> incidents and confronted him about it, insisting he come with her to the manager's
> office. She reported his perceived conduct to the manager on duty and then was
> dismissed while the manager spoke with the male employee, who denied it.
> [P]laintiff returned to her work, whereupon one of her co-workers informed her that
> the employee she was complaining about was the store owner's son.  [P]laintiff
> then approached another manager and asked to speak to the store owner, Scott
> Richardson.  She again reported the perceived offensive conduct, and Richardson
> assured her that he would investigate and review store camera footage. He
> delegated the task of gathering the relevant footage to BCDR's Operations Director,
> Jake Burleson, and the next morning, August 10, 2018, Richardson reviewed the
> footage with Burleson.  None of the video from any of the dates when [P]laintiff
> was working at the same time as his son depicted any improper contact.  Richardson
> then fired the plaintiff for lying.

(ECF No. 43 at 1-2.)

Plaintiff later brought the instant suit alleging retaliation based on her complaint to

management.  (*See* ECF No. 1-1.)  Defendant filed the Motion for Summary Judgment in October

2020, and the Report was entered shortly thereafter.  (*See* ECF Nos. 28, 43.)  The court held a

hearing on this matter on June 10, 2021, at which the parties appeared and presented arguments.

(*See* ECF No. 50.)

---

[2] The Report sets forth the relevant facts and legal standards, which this court adopts and
incorporates herein without a full recitation.

## II.    JURISDICTION

This court has jurisdiction over Plaintiff's Title VII claims via 28 U.S.C. § 1331, as they arise under the laws of the United States, and also via 42 U.S.C. § 2000e–5(f)(3), which empowers district courts to hear claims "brought under" Title VII.

## III.    LEGAL STANDARD

A. Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).  The court reviews *de novo* only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to–including those portions to which only "general and conclusory" objections have been made–for clear error.  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  *See* 28 U.S.C. § 636(b)(1).

B. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under governable law will properly preclude the entry of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party in order to avoid summary judgment. *See id.* at 248.

C. <u>Retaliation under Title VII</u>

"The *McDonnell Douglas* framework is a three-step burden-shifting framework used by Title VII plaintiffs who lack direct evidence of retaliatory discrimination."[3] *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citation omitted). "To prevail under the *McDonnell Douglas* framework, Plaintiff must first establish a *prima facie* case by showing: '(i) that [she] engaged in protected activity, (ii) that [Defendant] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity.'" *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)). "A plaintiff [establishes that the defendant took an adverse action against him or her] if 'a reasonable employee would have found the challenged action materially adverse,' meaning that it 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Pyatt v. Harvest Hope Food Bank*, No. 3:10-CV-2002-MBS, 2012 WL 1098627, at *9 (D.S.C. Mar. 29, 2012)

---

[3] Neither party objected to the Magistrate Judge's application of the *McDonnell Douglas* framework in this matter.

(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Once Plaintiff establishes *prima facie* retaliation, "the burden of production then shifts to the employer to articulate a . . . non-retaliatory reason for the adverse action." *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). If the employer meets this burden, "the burden then shifts back to [P]laintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." *Id.*; *Moss v. Savannah River Remediation, LLC*, No. 1:14-CV-03808-JMC, 2016 WL 5402859, at *3 (D.S.C. Sept. 28, 2016).

Currently at issue is whether Plaintiff has carried her burden at the "pretext" prong. "[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir.1998)); *see Nnadozie v. ManorCare Health Servs., LLC*, 792 F. App'x 260, 262-63 (4th Cir. 2019) ("In determining whether [a plaintiff] engaged in the alleged misconduct, '[i]t is the perception of the decision maker which is relevant.'" (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)); *Drummond v. Mabus*, No. 4:15-CV-110-FL, 2016 WL 4921424, at *6 (E.D.N.C. Sept. 15, 2016), *aff'd sub nom. Drummond v. Stackley*, 687 F. App'x 277 (4th Cir. 2017) ("[T]he veracity of defendant's proffered nondiscriminatory reason must be evaluated through defendant's eyes. Put another way, in order to go to trial, plaintiff must supply evidence that calls the honesty of defendant's proffered justifications into question." (internal citations omitted)); *Irani v. Palmetto Health*, 767 F. App'x 399, 419 (4th Cir. 2019) (explaining that when fired for poor performance, "Appellant cannot create a genuine issue of material fact

merely by arguing that his performance was sufficient"); *see also Moses v. Correct Care of S.C., LLC*, No. 3:18-CV-2358-JFA-SVH, 2020 WL 2899157, at *6 (D.S.C. June 3, 2020) (employer's good-faith mistake in firing a plaintiff for misconduct she did not commit is not a Title VII violation).

The court's role is not that of "a super-personnel department, weighing the prudence of employment decisions made by [Defendant]." *DeJarnette*, 133 F.3d at 299 (court should not substitute its judgment for the employer's when analyzing pretext); *see Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017) (first citing *Richey v. City of Independence*, 540 F.3d 779, 785 (8th Cir. 2008) ("[W]hen an employer is presented with a 'he said, she said' set of facts involving two employees, and the employer disbelieves the employee and disciplines her, the employer is not liable so long as it took the adverse action because of a good faith belief that the employee made false accusations." (internal marks altered)); and then citing *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) ("When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true? When the resulting employer's investigation (not tied to the government) produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions—that is, to accept one as true and to reject one as fictitious—at least, as long as the choice is an honest choice.")).

Relatedly, "the fact that [Defendant's] investigation may not have been as thorough as [Plaintiff] would have liked does not establish pretext." *Nnadozie*, 792 F. App'x at 262 (citing *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011)); *Dinda v. CSC Gov't Sols., LLC*, No. 2:17-CV-03171-DCN-MGB, 2019 WL 4280370, at *12 (D.S.C. Mar. 21, 2019), *report and recommendation adopted*, No. 2:17-CV-03171-DCN, 2019 WL 3244186 (D.S.C. July 19, 2019)

("Plaintiff's contentions regarding the veracity of Defendants' investigation and the fairness of his termination are not relevant to the pretext inquiry. [A]n employer's failure to adhere to common notions of fairness in the termination process is not probative of discriminatory intent and cannot show pretext." (citation omitted)).

## IV.   ANALYSIS

### A.   Report and Recommendation

In January 2021, the Magistrate Judge issued the Report suggesting the court deny Defendant's Motion for Summary Judgment. (ECF No. 43.) In the Report, the Magistrate Judge focused on whether Defendant articulated a non-retaliatory reason for firing Plaintiff, expounding that Defendant's "reason need only be honestly held, even if ultimately incorrect." (*Id.* at 6 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217-18 (4th Cir. 2007)).) The Magistrate Judge then explained that Plaintiff's "claim turns on whether she was fired because of retaliatory animus stemming from her complaint about the boss's son," and whether Defendant's proffered reason for firing Plaintiff—"because she lied about the reported misconduct of her co-worker"—was non-retaliatory.[4] (ECF No. 43 at 7-8.)

The Magistrate Judge determined a dispute existed whether Defendant honestly believed Plaintiff lied about her co-worker's misconduct. (*Id.* at 8.) The Magistrate Judge began by examining Richardson's and other employees' statements on whether Plaintiff's story had changed

---

[4] The Magistrate Judge also noted Defendant's insistence that Plaintiff could not

> show a *prima facie* case of retaliation, arguing that she cannot show that her opposition activity was reasonable since she was lying about her co-worker's conduct. [(ECF No. 34 at 5-8.)] However, this begs the question of the genuineness of . . . [D]efendant's belief that she was lying, so the court's analysis of this question at the pretext stage applies equally to this argument.

(ECF No. 43 at 8 n.1.)

regarding the number of times she was inappropriately touched. (*Id.*) On the one hand, the Magistrate Judge observed, Richardson and another manager said Plaintiff's story on the number of inappropriate touches varied greatly, ranging from the fifties to the teens. (*Id.*) Yet on the other, the Magistrate Judge pointed out two different Team Leaders agreed that Plaintiff's recounting of such touches was in the teens, and a third Team Leader member did not specify a particular number.[5] (*Id.* at 8-9.) Given these disputed figures regarding the number of times Plaintiff asserted she was touched, the Magistrate Judge decided "a jury could reasonably conclude that Richardson inflated the numbers to make [P]laintiff's story sound more improbable," which directly related to whether Defendant honestly believed Plaintiff lied. (*Id.* at 9.)

Next, the Magistrate Judge turned to video footage that purportedly captured some or all of the instances in question, ultimately finding such evidence was inconclusive. (*Id.* at 9-10.) Specifically, while the videos did not appear to depict any inappropriate contact, the Magistrate Judge remarked that some of the shots were obstructed, and Richardson himself agreed the cameras did "not show every angle during every shift when [P]laintiff and the other employee worked together." (*Id.* at 10.)

Lastly, the Magistrate Judge concluded "the inherent familial bias" present in this matter "permits a reasonable inference of both retaliatory animus and pretext." (*Id.* at 11.) The Magistrate Judge emphasized that Richardson, the decision-maker in this case, was the accused employee's father. (*Id.* at 10.) The Magistrate Judge then continued that "familial bias—which is not inherent in the run-of-the-mill employment relationship—is what a jury could reasonably infer *supplies* the requisite retaliatory animus for a Title VII violation." (*Id.* (emphasis in original).) Further, the

---

[5] The Magistrate Judge noted both Team Leaders' recounting of how many times Plaintiff complained of being touched "closely matched with . . . [P]laintiff's testimony." (ECF No. 43 at 8.)

Magistrate Judge noted such familial bias bolstered "the temporal proximity" between Plaintiff's complaint and termination. (*Id.* at 11.)

At bottom, the Magistrate Judge found

a jury could reasonably find that Richardson was dissembling when he stated that he discharged [P]laintiff for lying, and that he gave that reason as a pretext to get rid of [P]laintiff because she complained about his son. On the other hand, a jury could also reasonably agree that [P]laintiff was lying, which could subject her to sanctions and potential penalties for perjury. The record permits a reasonable inference either way, so a jury must resolve this disputed issue of material fact.

(*Id.* at 12 (citations omitted).)

B.     Objections

Defendant's Objections to the Report concentrate on the findings surrounding pretext, as it insists the Magistrate Judge erred by concluding sufficient evidence of pretext existed to survive summary judgment. (ECF No. 45 at 7-9.) Defendant further claims the Report "improperly focuse[d] on whether Plaintiff actually lied rather than whether BCDR honestly believed she lied." (*Id.* at 9-11.) Lastly, Defendant contends any possible "familial bias" in this matter is not sufficient to sustain a Title VII retaliation claim, and the Magistrate Judge's finding on this issue "would have the impermissible effect of rewriting federal law." (*Id.* at 11-12.)

In Reply, Plaintiff observes the Magistrate Judge properly found underlying disputes on whether BCDR honestly believed Plaintiff lied. (ECF No. 46 at 6-7.) Plaintiff likewise points to, *inter alia*, inconsistencies among BCDR employees in recounting how many times Plaintiff told them she was inappropriately touched. (*Id.* at 7-9.) Plaintiff also discards the contention that familial bias is irrelevant; instead, Plaintiff posits that "familial bias, in addition to other record evidence . . . is a basis from which the jury may ultimately find retaliatory animus resulted in Plaintiff's termination." (*Id.* at 10-11.)

C.    The Court's Review

Here, Plaintiff has failed to show Defendant's legitimate reasons for her termination were pretext for retaliation.[6]  Specifically, Plaintiff has not carried her burden to contest that Chick-Fil-A held an honest belief she lied about her complaint.  Chick-Fil-A highlights the following information to support its assertion that Plaintiff was legitimately fired because Defendant believed she lied: four employees (three Team Leaders and Store Manager Travis Green) averred that Plaintiff complained of being *groped* and/or *grabbed*, as well as inappropriately touched.  (*See* ECF Nos. 33-7; 34-1 through 34-4 (emphasis added).)  Richardson likewise testified that Plaintiff complained the accused employee's "hand traveled up between her legs" and on her buttocks. (ECF No. 28-2 at 18:17-22; 30:7-17.)  After an investigation that included reviewing hours of footage from no less than eight cameras[7] and interviewing certain employees, all five of the above-mentioned employees—and indeed, Plaintiff herself in many instances[8]—agreed the video contained no visible instances of groping, grabbing, or any other inappropriate touching. Relatedly, Plaintiff and the accused employee worked in the same vicinity only in limited instances.  According to Plaintiff, during her few weeks of employment at Chick-Fil-A,

> [t]here were times where [the accused employee] worked outside the entire time I was there. You see what I mean?  Like, he worked the drive-thru. Like, I barely saw him inside. I think he worked three to close and I worked nine to five. So, during the days we worked together, there was usually only that two-hour window. And most days he'd be outside.

---

[6] In analyzing pretext, the court assumes without deciding that each party has met their respective burdens under the *McDonnell Douglas* framework to reach this prong.

[7] (*See* ECF Nos. 33 at 8; 33-1 at 36:13-14.)

[8] During Plaintiff's deposition, when shown footage from the dates on which she and the accused employee worked in physical proximity, she repeatedly could not conclusively identify any physical contact in numerous video clips.  (*See* ECF No. 28-3 at 124-40.)  Regarding two instances in which it appears contact did occur, in the first instance she admits the accused employee did not contact her buttocks (*id.* at 148), and in the second instance she insists the employee "touch[ed] her] butt," although video evidence seems to show the food tray grazed her waist above her belt (*id.* at 99).

(*See* ECF No. 23-3 at 119:11-22.) Additionally, there is no evidence of any prior complaints lodged against the accused employee.[9] And Chick-Fil-A's employment policies include provisions for immediately firing an employee for deliberately lying. (*See* ECF No. 28-1 at 3-4.)

Chick-Fil-A employees also reported that Plaintiff changed her story. Two of the three Team Leaders recounted that, on August 9, 2018, Plaintiff complained she was inappropriately contacted thirteen to fifteen times. (ECF Nos. 28-4; 28-6; 34-2; 34-4.) The same day on a call between Plaintiff and Richardson, Richardson asserts Plaintiff complained of inappropriate physical contacts that reached into either the forties or fifties. (*See* ECF No. 28-2 at 18:8-19:17.) The next day on August 10, in a meeting with Richardson, Green, and Plaintiff, Richardson and Green insist Plaintiff asserted she was inappropriately touched anywhere from in the teens up to forty or fifty times. (*See* ECF Nos. 28-2 at 29:15-20; 34-1.) Richardson and Green also claim during the August 10 meeting Plaintiff changed *how* she was touched—first being groped, grabbed, or touched "on [her] butt and . . . between [her] legs[,]" before later "back-pedal[ing]" on her allegations after learning "she was going to have to be terminated" for lying.[10] (*See* ECF Nos. 28-2 at 30:7-31:12; 34-1.)

In an effort to show pretext—here, that Defendant really fired her in retaliation for her complaint and not because Chick-Fil-A believed she lied—Plaintiff posits the record contains "very close temporal proximity" along with "a biased decision-maker who cannot keep his story

---

[9] In fact, Green and all three Team Leaders submitted declarations saying they never received complaints from any other individual regarding the accused employee. (ECF Nos. 34-1 through 34-4.) All three Team Leaders further observed any such complaints would have been "out of character" for the accused employee based upon his reputation and temperament. (ECF Nos. 34-2 through 34-4.)

[10] Green also asserts Plaintiff's story changed during the August 10 meeting as to *when* she was touched—either solely on August 9, 2018, or throughout her brief period of employment. (*See* ECF No. 34-1.)

straight." (ECF No. 33 at 14, 18.) Plaintiff further believes Richardson, as the owner and accused's father, should not have been involved in the investigation; Plaintiff should have been interviewed before the decision to terminate her was made; Richardson's failure to see "obvious contact" on the video between his son and Plaintiff discredits his reasons for terminating her; and "Richardson's narrative of Plaintiff's report has shifted wildly." (*Id.* at 18-20.) Plaintiff also highlights potential familial bias that spurred retaliation from her complaint and inconclusive video evidence to proclaim pretext. (ECF No. 45 at 9.)

Yet even in the most favorable light to Plaintiff, these contentions are insufficient for her claim to survive summary judgment. For one, Plaintiff's discontent with the investigatory process is simply not enough to establish pretext at this stage, particularly when, as here, the investigation was not obviously inadequate. Moreover, Richardson's denial of what Plaintiff terms as "obvious contact" between herself and his son is in reality (and even in the light most favorable to her) not so clear, as the video clips in question are largely inconclusive and, in any event, do not appear to visibly capture any instances of inappropriate contact.[11] (ECF No. 33 at 11-12.) Likewise, the lack of conclusive video evidence certainly does not help Plaintiff carry *her* burden of disputing that Defendant honestly believed she lied in her complaint, particularly given the presence of eight on-site cameras[12] and the fact no less than five other employees agreed such video did not depict *any* instances of groping, grabbing, or other inappropriate touching.[13]

---

[11] Indeed, the findings within the Report likewise characterize the video evidence as "inconclusive." (ECF No. 43 at 9-10.)

[12] It appears only one camera located behind the cash register area captured *any* type of physical contact between the accused employee and Plaintiff.

[13] This remains true even though "there is no guarantee" the cameras would capture "each and every occurrence" of inappropriate touching. (ECF No. 33-1 at 42.) The court also notes Plaintiff does not claim any relevant footage was altered or is missing.

It is true *post hoc* rationalizations or discrepancies as to why an employee was terminated may be probative of pretext. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 647 (4th Cir. 2002). Yet even if Richardson's recounting of Plaintiff's story has changed somewhat over time by, *inter alia*, increasing the number of alleged touches from in the forties to the fifties, such relatively minor discrepancies, even in the most favorable light, do not establish pretext, particularly when Richardson has stressed that Plaintiff's account varied considerably.[14] *See Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) ("[T]he plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity[.]").

Further, the court agrees that Richardson's recounting of the type of contact Plaintiff alleged is somewhat more invasive than the Team Leaders' accounts. But the Team Leaders were apparently not present on the phone call between Richardson and Plaintiff, nor at the meeting involving Richardson, Green, and Plaintiff, where Plaintiff purportedly claimed the accused employee "grabbed and groped her buttocks and between her thighs." (ECF No. 34-1 at 2.) Green, the only other individual in attendance at the August 10 meeting, supports Richardson's version of events. (*See id.*) And, regardless, the inconsistencies between Richardson's (and Green's) account when compared to the Team Leaders' versions are not as inconsistent as Plaintiff implies. Rather than the Team Leaders' statements simply "refer[ring] to a pattern of consistent grazing and brushing," as Plaintiff insists, the court observes that *all* of the Team Leaders' accounts specifically referenced "groping" or "grabbing," as well as touching, both in their initial investigatory statements made in August 2018 and their subsequent declarations submitted in

---

[14] While Richardson was the ultimate decision-maker on whether to fire Plaintiff, the court also observes that after investigation, Green recommended Plaintiff be terminated "based on her dishonesty," and Richardson agreed. (ECF No. 34-1 at 3.)

November 2020. (*See* ECF Nos. 33-7; 34-2 through 34-4.) Lastly—and crucially, given that Plaintiff carries the burden to prove pretext—Plaintiff has not demonstrated that such discrepancies were caused by Richardson and Green being untruthful, rather than Plaintiff telling the Team Leaders one version of events and Richardson and Green an altered version.

Indeed, beyond the issues outlined above, Chick-Fil-A's employees have consistently stuck to their version of events. Richardson and Green claimed Plaintiff changed key aspects of her story; two Team Leaders consistently asserted Plaintiff complained of thirteen to fifteen instances of inappropriate physical contact; all five BCDR employees consistently described Plaintiff's initial complaint as including allegations that went beyond simply being grazed or touched; and all five employees consistently asserted they observed no inappropriate touching in the video evidence. It thus appears that Richardson, as the ultimate decision-maker, and his employees have offered substantially consistent reasons and underlying rationale for terminating Plaintiff. *See Nobrega v. Piedmont Airlines, Inc.*, No. 1:20-CV-00105-LMB-IDD, 2021 WL 1895892, at *7 (E.D. Va. May 11, 2021) (explaining defendant's "consistent explanation for why it terminated plaintiff weighs against any finding of pretext." (citation omitted)).

And of what remains, the court finds that close temporal proximity and the mere possibility of familial bias, without more, are simply inadequate to meet Plaintiff's burden of showing pretext at this stage in the case.

Otherwise, Plaintiff has offered no evidence to discredit Defendant's honest belief that she lied. For instance, despite purportedly calling aloud in an area generally crowded with Chick-Fil-A employees on numerous occasions when the accused employee touched her, she has offered no witnesses to corroborate her story. Despite asserting Richardson is biased and both Richardson and Green are essentially being untruthful, she has offered no corroboration or other support for

her opinions. And despite claiming she was inappropriately touched fourteen (14) times in a relatively short time frame within view of at least one camera, she has not evinced why it was pretext for Chick-Fil-A to fire her when the relevant video footage contained very few occasions of *any* physical contact, and *no* visible instances of the inappropriate touching, grabbing, or groping outlined in Plaintiff's complaint.

At bottom, and in the light most favorable to the non-movant, the court finds Plaintiff has failed to carry her burden to show Chick-Fil-A's stated reasons for her termination were untrue or otherwise made in bad faith. *See Hawkins*, 203 F.3d at 279 (affirming the lower court's dismissal on a judgment as a matter of law because plaintiff could not "show that Pepsi's stated reasons for terminating her [for poor performance] were not the real reasons for her discharge"; she failed, "for example, to supply evidence that [her supervisor] actually believed her performance was good"); *Moses*, 2020 WL 2899157, at *6, 7 (D.S.C. June 3, 2020) (granting summary judgment after finding plaintiff had "presented no evidence that [d]efendant's proffered reasons for termination were motivated by sex[ or retaliation,] or otherwise made in bad faith").

## V. CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 28.) The court **ACCEPTS** in part, **REJECTS** in part, and **MODIFIES** in part the Magistrate Judge's Report (ECF No. 43) and incorporates it herein by reference as set forth above.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

June 23, 2021
Columbia, South Carolina